Patricia A. YERDON, Plaintiff,

v.

TEAMSTERS LOCAL 1149, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO; Robert L. Henry, Individually, as Secretary–Treasurer and Principal Executive Officer of Local 1149 and as a Member of the Executive Board of Local 1149; David W. Stewart, Individually, as Secretary–Treasurer of Local 1149 and as a Member of the Executive Board of Local 1149; Joseph Zainchowski, Individually, as Vice–President of Local 1149 and as a Member of the Executive Board of Local 1149; Robert Calabria, Individually, as Trustee of Local 1149 and as a Member of the Executive Board of Local 1149; Joseph Davis, Individually, as Trustee of Local 1149 and as a Member of the Executive Board of Local 1149; John Case, Individually, as a Trustee of Local 1149 and as a Member of Local 1149 Executive Board; Thomas Halstead, Individually, as Vice–President of Local 1149 and as a

Member of the Local 1149 Executive Board; Stephen W. Richmond, Individually, as President and Business Agent of Local 1149 and as a Member of the Local 1149 Executive Board; Howard Ormsby, Individually as Recording Secretary of Local 1149 and as a Member of the Local 1149 Executive Board; Louis Knapp, Jr., Individually, as Trustee of Local 1149 and as a Member of the Local 1149 Executive Board; Leonard Martin, Individually, as Trustee of Local 1149 and as a Member of the Local 1149 Executive Board; and Anna Swank–Worth, Individually, as Recording Secretary of Local 1149 and as a Member of the Local 1149 Executive Board, Defendants.

Civ. No. 94–CV–424.

United States District Court,
N.D. New York.

May 12, 1995.

Pinsky & Sandalis, Syracuse, NY (Alan R. Peterman, of counsel), for plaintiff.

Satter & Connor (Mimi Satter, of counsel), Emil M. Rossi, Syracuse, NY, Barbara Harvey, Detroit, MI, for defendants.

### DECISION AND ORDER

SCULLIN, District Judge:

### PROCEDURAL BACKGROUND

Currently before the court is Teamsters Local 1149's ("Local 1149") and the individual defendants' motion to dismiss for failure to state a claim or alternatively for summary judgment. This is the third time this action is before the court.

Plaintiff originally brought this action alleging violations of:

- Title VII, 42 U.S.C. § 2000e *et seq.;*
- New York Executive Law, § 290 *et seq.;* and
- The Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411, 412 and 529.

In September 1994, the court considered motions for summary judgment made by the individual defendants, Local 1149 and the

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO's ("International Union"). At that time the court:

- granted Local 1149's and the individual defendants' motion on the Title VII and New York Executive Law claims because Local 1149 had too few employees to be considered an employer under either of those statutes;

- reserved decision on Local 1149's and the individual defendants' liability on the LMRDA claims;

- granted the International Union's motion for summary judgment on all claims holding that plaintiff failed to show that the International Union participated in or ratified the actions of Local 1149; and

- granted plaintiff leave to amend her complaint to state specifically claims (1) under Title VII against Local 1149 and the individual defendants' as a labor organization (not as an employer), (2) under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of the International Brotherhood of Teamsters Constitution, and (3) for intentional infliction of emotional distress.

On November 18, 1994, the plaintiff filed an amended complaint and realleged claims against Local 1149 and the individual defendants for violations of

- Title VII, 42 U.S.C. § 2000e *et seq.*, and New York Executive Law, § 290 *et seq.*;

- The Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411, 412 and 529; and added

- a claim for breach of the International Brotherhood of Teamsters Constitution (the "International Constitution" or "Constitution") in violation of § 301 of the LMRA, 29 U.S.C. § 185.[1]

Local 1149 and the individual defendants now move to dismiss those causes of action for failure to state a claim or alternatively for summary judgment.

---

1. The amended complaint also alleged claims against the International Union that were re-

## BACKGROUND

Plaintiff Patricia A. Yerdon was hired in 1984 as a secretary to Local 1149, and was required to become a member of the union at that time as well. Plaintiff apparently was able to work from 1984 through 1989 without incident. In October 1989, plaintiff's supporters on Local 1149's Executive Board were unseated. Plaintiff alleges that the newly nominated officers—the individual defendants here—began discrediting her in an effort to force her resignation. The discrediting allegedly consisted of the "dissemination of falsehoods concerning plaintiff and plaintiff's terms and conditions of employment and [an] ongoing campaign of sexual harassment including ... disparaging sexual remarks to plaintiff, continual and repeated staring or glaring at plaintiff's chest and unwelcome touching." Am. Compl. ¶ 25.

In October 1990, plaintiff filed union charges against the individual defendants claiming that they sexually harassed her in violation of the International Constitution and by-laws. After conducting a hearing on the charges, the Teamsters Joint Council (the regional level union comprised of local delegates) found that the individual defendants had sexually harassed and retaliated against the plaintiff and ordered the individual defendants to cease and desist their discriminatory behavior and to restore a pay cut imposed on plaintiff. The individual defendants appealed the decision to the General Executive Board of the International Union, which, after a *de novo* review, affirmed the Joint Council's decision and ordered Local 1149 to restore plaintiff's pay.

Plaintiff admits that Local 1149 has restored her pay in accord with the General Executive Board's decision, but she contends that the harassment did not cease. For example, plaintiff alleges that members of Local 1149's Executive Board "attempted to give defendant Robert Henry the power to remove plaintiff from her position as Secretary for the Union office." Am. Compl. ¶ 41. Consequently, on December 10, 1992, plaintiff re-instituted charges with the Joint

solved separately from the current motion.

Council against the individual defendants alleging continued harassment.

Also in December 1992, plaintiff left her job as secretary because of disability and has not returned to work. She allegedly suffers from emotional distress caused by the individual defendants' harassment. Because plaintiff was indefinitely unavailable for work, her employment was terminated effective February 1993. On April 13, 1993, plaintiff filed claims with the Equal Employment Opportunity Commission ("EEOC") charging sexual discrimination.[2] Also on April 13, 1993 the Joint Council postponed hearings on the charges without explanation and has not rescheduled them. Thereafter, on May 17, 1993, defendant Robert Henry filed internal union charges against plaintiff and plaintiff's former boss claiming that plaintiff was overpaid. Plaintiff contends that those charges were filed in retaliation for her EEOC complaints. In July 1993, in accord with union by-laws, after six months of separation from employment with the union plaintiff was honorably withdrawn from the union. Under honorable withdrawal, plaintiff is entitled to attend and speak at meetings, but she cannot vote nor run for union office.

## DISCUSSION

### I. STANDARDS FOR SUMMARY JUDGMENT

■ Even though defendants' motion is styled as alternatively based on failure to state a claim upon which relief can be granted and summary judgment, both parties submitted affidavits and other matters outside the pleadings for the court's consideration. Thus the court will treat defendants' motion as one for summary judgment.

■ Summary judgment is appropriate only when the moving party shows that no genuine issue of material fact exists as a matter of law. *See, e.g.,* Fed.R.Civ.Proc. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## II. TITLE VII DISCRIMINATION [3]

Title VII, 42 U.S.C. § 2000e–2(c) provides:

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise discriminate against, any individual because of [her] . . . sex . . .;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's . . . sex . . .; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

Defendants admit that they are a labor organization, but claim that the plaintiff has not alleged discrimination in her capacity as union member. Plaintiff claims that defendants are a labor organization, that she is a union member, and because she was discriminated against by defendants, defendants have violated 42 U.S.C. § 2000e–2(c).

On the previous motion for summary judgment the court noted that plaintiff appeared to be alleging that she was discriminated against in her capacity as an employee and not as a union member. The court held that Local 1149 was not an employer under Title VII because it did not employ the requisite number of people, but nonetheless, allowed plaintiff leave to amend her complaint to reallege *with specificity* any claims she had against Local 1149 in its capacity as union and in her capacity as union member. As

---

**2.** The EEOC terminated its process and issued plaintiff a "right to sue" letter dated February 28, 1994.

**3.** Plaintiff's third cause of action alleges claims under New York Executive Law. To the extent

that the New York Executive Law creates a cause of action for sex discrimination it is dealt with under this section; to the extent that the New York Executive Law creates a cause of action for retaliation it is dealt with under the next section.

the Seventh Circuit stated in *Chavero v. Local 241, Div. of the Amalgamated Transit Union,* 787 F.2d 1154 (7th Cir.1986):

"Under Title VII a union can be both an 'employer' and a 'labor organization.' As a labor organization, the union is covered under the Act and may be liable *in respect to its dealings with employers or its membership, see* 42 U.S.C. § 2000e–2(c), if it fits the definition of a labor organization."

*Id.* at 1155 n. 1 (emphasis added).

This notion was echoed by the District Court of Minnesota in *Phelps v. International Molders & Allied Workers Union,* No. 4–79–388, 1981 WL 192, 25 Fair Empl. Prac.Cas. (BNA) 1164 (D.Minn.1981) which found:

"The apparent intent of Congress in enacting § 2000e–2(c) was to prohibit discrimination by labor unions *when acting as unions and in respect to its dealings with employers. "* (emphasis added).

The principle was reiterated by the District of Maryland in *Maryland County Council of Supporting Servs. Employees, Local 500 v. EEOC,* Civ. Nos. Y–91–2312, H–91–3386, Mem. op. (D.Md.1992) (unpublished opinion) which reasoned:

"Section 2000e–2(c) was not intended to apply to the employee-employer relationship at issue here. See H.R.Rep. No. 914, 88th Cong., 2nd Sess., 2 U.S.C.C.A.N. 2403 (1964). *The purpose of this section was to compel labor organizations to extend full and equal membership rights and privileges to all of the employees they seek to represent;* and to deter labor organizations from causing, or attempting to cause an employer to discriminate against an employee." (emphasis added).

 The court agrees with the reasoning of those courts and finds that in order to hold Local 1149 liable in its capacity as labor organization under Title VII, plaintiff must allege that she was discriminated against in her capacity as union member as opposed to employee. Despite the court's admonition, plaintiff did not add any specific allegations that dealt with her capacity as a union member. Here plaintiff's allegations are that the defendants engaged in a campaign of sexual discrimination against her, marked by the "dissemination of falsehoods concerning plaintiff and plaintiff's terms and conditions of employment and ongoing campaign of sexual harassment including ... disparaging sexual remarks to plaintiff, continual and repeated staring or glaring at plaintiff's chest and unwelcome touching." Am.Compl. ¶ 25. These allegations only refer to plaintiff's employment relationship and thus fail to substantiate a claim for sex discrimination under Title VII against Local 1149 as a labor organization.

Therefore defendants' summary judgment motion is granted as to plaintiff's first cause of action under Title VII and plaintiff's third cause of action under New York Executive Law as it relates to a cause of action for sex discrimination.

## III. TITLE VII RETALIATION

Title VII, 42 U.S.C. § 2000e–3(a) provides:

It shall be an unlawful employment practice for ... a labor organization to discriminate against any member thereof ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In enforcing this section, courts have required plaintiffs to show three elements in order to establish a prima facie case of retaliation under Title VII: that (1) she was engaged in protected activity which was known to the defendant, (2) she suffered an adverse action, and (3) there was a causal connection between the protected activity and the adverse action. *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991).

 The plaintiff alleges that after she filed internal union charges against the individual defendants, the individual defendants and Local 1149 retaliated against her by refusing to sign her paychecks, altering her salary and vacation and terminating her employment.

As stated, the court has already held that the defendant is not an employer under Title VII and thus plaintiff cannot maintain a Title

VII cause of action based on retaliation in her capacity as employee, that is, in her terms and conditions of employment. Despite the court's specific admonition to state allegations that deal with plaintiff's membership rights, plaintiff again asserts allegations that were set forth in the original complaint, which refer to plaintiff's terms and conditions of employment and cannot form the basis of the complaint against the defendants as a labor organization.[4]

The plaintiff, however, has made some allegations with respect to her membership rights. The plaintiff claims that the defendants retaliated against her in her membership status by removing her from the Political Action Committee, Am.Compl. ¶ 30, by removing her from various committees, Yerdon Aff. dated Feb. 3, 1995 at ¶ 4, and by defendant Robert Henry filing internal union charges against both her and her former boss claiming that she was overpaid. Am. Compl. ¶ 49.

The removal from the Political Action Committee cannot be the basis for a Title VII retaliation claim because it took place prior to plaintiff's protected activity. Defendants have shown (and plaintiff has not rebutted) that the plaintiff was removed from the Political Action Committee in January of 1990 and that she filed her internal union charges in October 1990. Thus the removal could not have been in retaliation for the charges.

■ Plaintiff has also made conclusory allegations that defendants removed her from "various Union committees" and prohibited her from attending "various union functions." Yerdon Aff. dated Feb. 3, 1995 at ¶ 4. However, under Fed.R.Civ.P. 56(e), plaintiff, in opposing the summary judgment motion, is required to "set forth *specific facts* showing that there is a genuine issue for trial." Plaintiff cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation

or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990). Therefore plaintiff has failed to raise any genuine issue of material fact with respect to her participation on union committees.

■ Additionally, the union charges filed by Robert Henry cannot amount to retaliatory conduct because they have not resulted in any adverse action to plaintiff. Under Title VII a retaliatory act must result in some adverse consequence to plaintiff. *See, e.g., Johnson v. Frank,* 828 F.Supp. 1143, 1153 (S.D.N.Y.1993). Here, the charges have been tabled and have not affected plaintiff nor her membership rights in any adverse manner.

Therefore, as there are no genuine issues of material fact, defendants' summary judgment motion is granted as to plaintiff's second cause of action under Title VII and plaintiff's third cause of action under New York Executive Law as it relates to a cause of action for retaliation.

## IV. INTERFERENCE WITH MEMBERSHIP RIGHTS UNDER LMRDA

■ Plaintiff alleges that after she filed internal union charges alleging sex discrimination, defendants retaliated against her in violation of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2). Again plaintiff states the basis of this retaliation to be: refusing to sign her paychecks, altering her salary and vacation, terminating her employment and altering the terms of her membership rights.

29 U.S.C. § 411(a)(2) provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, sub-

---

4. It should be noted that the plaintiff has tried to argue that the retaliation is still continuing today with regard to her health benefits. However, these are all activities taking place after the date of the complaint and are not properly before the

court. The court has already provided plaintiff an opportunity to amend her complaint and declines to extend another opportunity. Fed. R.Civ.P. 15; *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

ject to the organization's established and reasonable rules pertaining to the conduct of meetings....

The Supreme Court has reasoned that the LMRDA was meant to protect union members' rights as members, not a union member's right to *employment* with the union. *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). Accordingly, the Second Circuit has held that in order to state a claim under § 411(a)(2) the plaintiff must show "a direct infringement of membership rights or a real threat to the democratic integrity of the union." *Franza v. International Brotherhood of Teamsters, Local 671,* 869 F.2d 41, 48 (2d Cir.1989).

In *Franza,* a union member who was appointed to work for the union's insurance plan was fired when a new Chairman of the insurance plan was elected. The union member claimed that he was fired because of his political support for the defeated candidate and thus claimed that his rights to free speech under § 411(a)(2) were violated. The Second Circuit held that the union member did not have a claim because his membership rights were not directly affected by the termination. The Second Circuit reasoned "that it is not a member's *employment by the union* that is protected by [§ 411]; rather it is his *membership in the union* that is safeguarded." *Id.* at 47 (emphasis in original). "Direct interference with [membership] rights is required to state a cognizable [§ 411] claim." *Id.* The court found that the plaintiff's union membership rights were unaffected by the termination and thus he had no claim under § 411.

Similarly, here, plaintiff alleges that defendants altered the terms and conditions of her employment in violation of § 411. However, the alteration of those terms and conditions had no affect on plaintiff's membership rights. Even after the defendants allegedly reduced plaintiff's salary, altered her vacation time, and ultimately terminated her, she was free to participate in union activities.

Plaintiff claims that *Franza* is distinguishable because the Second Circuit found Franza to be a policy-making employee and that plaintiff is not in a policy-making position. However the *Franza* court explicitly stated

that "[e]ven though the district court made no finding with respect to whether Franza was in a policy-making position, we assume he was not...." Moreover, the *Franza* court noted that "the test is not whether the employee is or is not in a policymaking position, rather the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status." *Id.* at 48.

Therefore plaintiff's claims that her terms and conditions of employment were affected are not actionable under § 411.

■ Plaintiff's claim based on her removal to withdrawal status is similarly unavailing. Initially, the court notes that the transfer to withdrawal status alone cannot be the basis of her claim because such a rule has been upheld as reasonable and not in violation of the LMRDA. *Reich v. Local 30, IBT,* 6 F.3d 978 (3d Cir.1993). Additionally, plaintiff cannot credibly maintain that her membership rights were directly affected by defendants' alleged harassment. The undisputed evidence is that plaintiff was terminated because she was indefinitely unavailable for work. She was unavailable for work on her doctor's recommendation. Plaintiff's membership status was not initially affected by the termination, that is, plaintiff was still free to participate in all her union activities after her termination. It wasn't until after six-months separation from employment within the union that, in accord with the International Constitution, plaintiff was moved to honorable withdrawal status. Thus it does not appear that defendants directly caused plaintiff's transfer to withdrawal status; rather it appears that plaintiff's failure to report to work caused her termination and her failure to find work within the union's jurisdiction for six months led to her transfer to withdrawal status. Therefore plaintiff can only show an indirect interference with her membership rights. However, "[c]laims of discharged union employees will not be upheld when based upon 'only an *indirect* interference with their membership rights.'" *Franza,* 869 F.2d at 47.

Based on the foregoing analysis, defendants' summary judgment motion is granted

as to plaintiff's fourth cause of action under LMRDA § 411.

## V. RETALIATION UNDER LMRDA

 Plaintiff alleges that after she filed internal union charges alleging sexual discrimination, the defendants, specifically Robert Henry, retaliated against her by filing union charges against her in violation of LMRDA, 29 U.S.C. § 529.

Section 529 provides that it is unlawful for a labor organization or its agents to "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which [s]he is entitled under the provisions of this chapter."

Similar to Title VII, a claim for retaliation under § 529 requires some type of action, in this case discipline, that adversely affects the plaintiff. Defendants contend that the mere filing of internal union charges is not discipline.

 Discipline under § 529 is "meant to refer only to punitive actions diminishing membership rights...." *Finnegan v. Leu*, 456 U.S. 431, 438, 102 S.Ct. 1867, 1871, 72 L.Ed.2d 239 (1982). Discipline has been held "to denote only punishment authorized by the union as a collective entity to enforce its rules," and that "the specifically enumerated types of discipline—fine, expulsion, and suspension—imply some sort of established disciplinary process rather than ad hoc retaliation by individual officers." *Breininger v. Sheet Metal Workers International*, 493 U.S. 67, 93, 110 S.Ct. 424, 439, 107 L.Ed.2d 388 (1989).

Accordingly, the failure to process a grievance was not considered discipline, *Camporeale v. Airborne Freight Corp.*, 732 F.Supp. 358, 366 (E.D.N.Y.), aff'd, 923 F.2d 842 (2d Cir.1990), critical findings of fact at a hearing without any accompanying formal action taken against the member was not discipline, *Perales Vara v. Laborers' International Union*, 662 F.Supp. 492 (S.D.Cal.1987), and a disciplinary decision that initially may have been in error but was set aside by an appellate body was not discipline. *Childs v. Local 18, IBEW*, 719 F.2d 1379 (9th Cir.1983).

It is not clear that the charges against the plaintiff have developed into a union-sanctioned activity as opposed to an ad hoc decision by an individual officer. Furthermore, there has been no adverse impact on plaintiff's membership rights. At this point the charges have been tabled and there has been no decision at all. Therefore, under the prevailing interpretations of the term discipline, Robert Henry's filing of charges against plaintiff cannot be considered retaliatory discipline under § 529.

Defendants' summary judgment motion is granted as to plaintiff's fifth cause of action under LMRDA § 529.

## VI. CLAIMS FOR BREACH OF THE INTERNATIONAL CONSTITUTION

 Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), grants federal courts jurisdiction to hear cases alleging violations of contracts between labor organizations. The Supreme Court has determined that union constitutions are considered contracts under § 301(a), and in the Second Circuit members can sue their unions for breach of the International Constitution. *Shea v. McCarthy*, 953 F.2d 29, 31 (2d Cir.1992).

### A. Exhaustion of Remedies

 As an initial matter, defendants contend that plaintiff has failed to exhaust her administrative remedies because she has filed charges with the union regarding the conduct at issue here and those charges have not been finally resolved. While exhaustion of remedies is usually required before resort to the judicial process, courts have discretion to excuse the exhaustion requirement if the circumstances warrant. *See Stevens v. Northwest Indiana Dist. Council*, 20 F.3d 720 (7th Cir.1994). Exhaustion may be excused when (i) the union officials are so hostile as to prevent a fair hearing, (ii) the procedures afford inadequate relief, and (iii) when the procedures would delay the employee's opportunity for a judicial hearing. *Id.* at 731.

 Here, plaintiff has in fact tried to exhaust administrative remedies by filing

charges against the local union that went all the way through the appeals process and filing further charges that were tabled by the union in April 1993, with no indication of when they will restart. Under the circumstances of this case the court excuses the exhaustion requirement.

### B. The Alleged Constitutional Breaches

■ Plaintiff claims that defendants violated the provisions of the International Constitution which prevent members from (1) "discriminat[ing] against a fellow worker on account of ... sex ..."; (2) from "exclud[ing] from membership or otherwise discriminating against any individual ... because of [her] ... sex ..."; and (3) from "retaliating or threatening to retaliate against any member for having filed disciplinary charges" or "for exercising rights under this Constitution."

First, this court finds that the sections of the International Constitution upon which plaintiff relies protect an individual's membership capacity, not an individual's employment relationship, "even if those employees are also members." *Korzen v. Local 705, IBT*, 851 F.Supp. 291, 295–96 (N.D.Ill.1994) (holding that the court will not "convert [Article XIX, § 7(b)(1)], a provision clearly directed at protecting membership rights, into an employment contract."). Thus, Plaintiff's claims suffer here from the same defects as the other claims—i.e., plaintiff cannot show any injury to her membership rights.

As discussed earlier, plaintiff's allegations either refer to the terms and conditions of her employment or do not allege sufficient facts to support a finding of injury to her membership rights.

Therefore defendants' summary judgment motion is granted as to plaintiff's sixth cause of action under LMRA § 301.

### VII. SANCTIONS

■ In their brief, defendants ask for reasonable attorneys' fees and costs. Plaintiff takes this to mean that defendants are asking for Rule 11 sanctions. Such a request is procedurally improper under Rule 11 be-cause it is not contained in a separate motion, and in any event, the court does not find that the plaintiff's behavior warrants the imposition of sanctions.

### VIII. SUPPLEMENTAL JURISDICTION

Because the court dismisses all of the federal claims, the only claim remaining is for common law intentional infliction of emotional distress. The court declines supplemental jurisdiction over such a claim under 28 U.S.C. § 1367.

Therefore it is hereby

ORDERED that defendants' motion for summary judgment is GRANTED and plaintiff's complaint is DISMISSED.

**IT IS SO ORDERED.**