91 F.3d 370
 152 L.R.R.M. (BNA) 3029, 71 Fair
Empl.Prac.Cas. (BNA) 1733,
68 Empl. Prac. Dec. P 44,238
 Patricia A. YERDON, Plaintiff-Appellant,
v.
Robert L. HENRY, Individually, as Secretary-Treasurer and
Principal Executive Officer of Local 1149 and as a Member of
the Executive Board of Local 1149; David W. Stewart,
Individually, as Secretary-Treasurer of Local 1149 and as a
Member of the Executive Board of Local 1149; Joseph
Zainchowski; Robert Calabria, Individually, as Trustee of
Local 1149 and as a Member of the Executive Board of Local
1149; John Case, Individually, as a Trustee of Local 1149
and as a Member of the Local 1149 Executive Board; Thomas
Halstead, Individually, as Vice-President of Local 1149 and
as a Member of the Local 1149 Executive Board; Stephen W.
Richmond, Individually, as President and Business Agent of
Local 1149 and as a Member of the Local 1149 Executive
Board; Howard Ormsby, Individually, as Recording Secretary
of Local 1149 and as a member of the Local 1149 Executive
Board; Louis Knapp, Jr. and Leonard Martin, Individually,
as a Trustee of Local 1149 and as members of the Local 1149
Executive Board; Anna Swank-Worth, Individually, as
Recording Secretary of Local 1149 and as a member of the
Local 1149 Executive Board; Teamsters Local 1149; and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, AFL-CIO, Defendants-Appellees.
 No. 682, Docket 95-7604.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 11, 1995.
Decided Aug. 6, 1996.
 
 Alan R. Peterman, Pinsky & Skandalis, Syracuse, New York, for Plaintiff-Appellant.
 Barbara Harvey, Detroit, Michigan, for Defendants-Appellees.
 C. Gregory Stewart, General Counsel; Gwendolyn Young Reams, Associate General Counsel; Vincent J. Blackwood, Assistant General Counsel; Karen Moran, for Amicus Curiae Equal Employment Opportunity Commission.
 Before: OAKES, WINTER, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff Patricia A. Yerdon, an employee of a local union, sued the local and other defendants for alleged sexual discrimination and retaliation for having complained of the discrimination. Yerdon now appeals from a decision and order entered in the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., District Judge ) that granted summary judgment in favor of the defendants and dismissed Yerdon's claims under Title VII of the Civil Rights Act, §§ 701 to 718, codified at 42 U.S.C. §§ 2000e to 2000e-17; the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(2), 412; and the Labor Management Relations Act, 29 U.S.C. § 185.
 
 BACKGROUND
 
 2
 From 1984 until 1993, Yerdon was employed as a secretary for Local 1149 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO ("Local 1149"). When she was hired as a secretary, Yerdon was required to become a member of the union. In October 1989, the plaintiff's supporters on Local 1149's Executive Board were unseated. Yerdon alleges that after new officers were seated, certain members of the Executive Board "began a campaign of sexual harassment directed at her." In October 1990, Yerdon filed union charges against members of the Executive Board, alleging sexual harassment and later amended her complaint to include an allegation concerning the reduction of a pay raise allegedly motivated by a retaliatory animus. In April 1991, the Executive Board voted to reduce the pay raise that Yerdon had received two months earlier to an increase of twenty-five cents per hour, fifty cents lower than her original raise.
 
 
 3
 In 1992, the New York Teamsters Joint Council No. 18 ("Joint Council") found that the individual defendants had sexually harassed Yerdon and also had retaliated against her. The Joint Council ordered the individual defendants to cease and desist their discriminatory behavior and to eliminate the pay cut imposed on the plaintiff. Yerdon v. Teamsters Local 1149, 886 F.Supp. 226, 229 (N.D.N.Y.1995). The General Executive Board of the International Union, exercising de novo review, sustained the Joint Council's decision.
 
 
 4
 Although Yerdon admits that eventually her full seventy-five cent raise was restored, she claims that certain members of the Executive Board continued to sexually harass her. On December 10, 1992, Yerdon filed new union charges against Local 1149, which have not yet been acted upon. Shortly after filing these charges, Yerdon went on medical leave, claiming to be suffering from emotional distress caused by the alleged sexual harassment. Because Yerdon was indefinitely unavailable for work, Local 1149 terminated her employment in February 1993. Her union membership, which was contingent on her remaining employed by Local 1149, was also terminated soon thereafter.
 
 
 5
 On April 13, 1993, Yerdon filed claims with the Equal Employment Opportunity Commission ("EEOC") charging sexual discrimination. On May 17, 1993, defendant Robert Henry, one of the newly seated board members, filed internal union charges against Yerdon and Yerdon's former boss claiming that Yerdon was overpaid. On March 31, 1994, Yerdon filed the initial federal complaint in this action. On June 15, 1994, the defendants moved to dismiss the complaint. On October 1, 1994, Yerdon's health insurance through the Local 1149 Health Fund was terminated.
 
 
 6
 On November 18, 1994, while the motion to dismiss the complaint was pending, Yerdon filed an amended complaint in which she alleged that Local 1149 and the individual defendants, in their capacity as a "labor organization," sexually harassed her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2; retaliated against her in violation of Title VII, because she complained of discrimination; violated her rights as a union member under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2), by reducing her pay, by altering her benefits and certain terms and conditions of her employment, and by continuing a course of harassment; violated the LMRDA, 29 U.S.C. § 412, by retaliating against her in filing allegedly baseless internal union charges against her; and violated Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by breaching Local 1149's by-laws and the Union's International Constitution, both of which prohibit sexual discrimination. On May 12, 1995, the district court granted summary judgment to the defendants on the plaintiff's amended complaint. This appeal followed.
 
 DISCUSSION
 
 7
 The district court disposed of Yerdon's claims by summary judgment. It is well-settled that in ruling on a motion for summary judgment,
 
 
 8
 [a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].
 
 
 9
 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. See Buttry v. General Signal Corp., 68 F.3d 1488, 1492 (2d Cir.1995). When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250, 106 S.Ct. at 2511.
 
 I. Section 703(c)(1) of Title VII
 
 10
 The principal issue on this appeal, which is of first impression in this circuit, is one of law: whether a labor union with fewer than fifteen employees, when sued in its capacity as an employer, is subject to any of the anti-discrimination provisions of Title VII of the 1964 Civil Rights Act. Section 703(a) of Title VII makes it an unlawful employment practice for an employer to engage in employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The term "employer" is defined as
 
 
 11
 a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include ... a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26....
 
 
 12
 42 U.S.C. § 2000e(b).
 
 
 13
 The district court determined that because Yerdon sued Local 1149 in its capacity as an employer, and not as a labor union, she must establish that Local 1149 meets the statutory definition of "employer." Yerdon v. Teamsters Local 1149, 886 F.Supp. at 231. Because it is undisputed that Local 1149 did not have the requisite number of employees during the relevant period to satisfy the statutory definition, the district court concluded that Local 1149 was not an employer for purposes of Title VII. We agree with the district court that as long as Local 1149 had fewer than fifteen employees, it could not be subject to the prohibitions against employer discrimination set out in § 703(a), 42 U.S.C. § 2000e-2(a).
 
 
 14
 Under Title VII, a union may fall within the definitions of both "employer" and "labor organization." Local 1149 in fact concedes that it is a labor organization under the statutory definition. The bar against discrimination contained in § 703(c) is specifically applicable to "labor organizations." This section states, in pertinent part:
 
 
 15
 It shall be an unlawful employment practice for a labor organization--
 
 
 16
 (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin.
 
 
 17
 42 U.S.C. § 2000e-2(c). Unlike the definition of "employer," incorporated in § 703(a), the definition of "labor organization," found at § 701(d) and incorporated in § 703(c), does not categorically condition its applicability on the number of union members or employees. As long as a labor organization "maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer," 42 U.S.C. § 2000e(e), it is deemed to be a "labor organization engaged in an industry affecting commerce," 42 U.S.C. § 2000e(d).[1] Yerdon maintains that Local 1149 may be held liable for its discriminatory treatment of her as an employee under § 703(c). Local 1149 contends that § 703(c)(1) applies only to its actions as a labor organization and that its liability as an employer is governed by § 703(a).
 
 
 18
 The EEOC, as amicus curiae, takes the view that a labor union is covered by Title VII when acting in its capacity as an employer even if it does not meet the definition of "employer" under Title VII. The EEOC grounds this view in the broad language of § 703(c)(1)'s prohibition against sex discrimination: "[I]t shall be an unlawful employment practice for a labor organization ... to exclude or to expel from its membership, or otherwise discriminate against, any individual because of ... [her] sex." 42 U.S.C. § 2000e-2(c)(1). Such an interpretation, the EEOC argues, is not inconsistent with the congressional policy that animated the statutory exclusion of small employers from the definition of "employer," i.e., allowing small family-run businesses to be operated by friends and relatives of the owners without the administrative burdens of complying with Title VII. See S. 2515, 92d Cong., 2d Sess., 118 Cong. Rec. 2386-90, 2409-10 (1972). The EEOC maintains that because labor organizations are already subject to a wide array of regulatory and reporting requirements, subjecting them to liability under § 703(c)(1) would not be inconsistent with the intention of Congress.
 
 
 19
 The EEOC is the agency charged by Congress with the interpretation, administration, and enforcement of Title VII. Unlike many other federal agencies, however, the EEOC does not have the power to promulgate rules or regulations with respect to Title VII. See General Elec. Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 410-11, 50 L.Ed.2d 343 (1976) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975)). Thus, the weight accorded a particular EEOC guideline or interpretation with respect to Title VII depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Id. at 142, 97 S.Ct. at 411; see Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986) (although not controlling upon the courts, EEOC guidelines "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (citation omitted). Ultimately, EEOC statements of policy "should always be considered, but they should not be regarded as conclusive unless reason and statutory interpretation support their conclusion." Guardians Ass'n v. Civil Serv. Comm'n, 630 F.2d 79, 91 (2d Cir.1980).
 
 
 20
 We conclude that, in the present case, the EEOC's interpretation of § 703(c)(1) should be given little weight. At the outset, we find the language of the statute to be unambiguous in the context of the statute in its entirety. Accordingly, deference is not warranted. Cf. EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988) ("EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference."). Moreover, to hold otherwise would contravene the plain language of the statute. See EEOC v. Arabian Am. Oil, Co., 499 U.S. 244, 257-258, 111 S.Ct. 1227, 1235-36, 113 L.Ed.2d 274 (1991) (applying Gilbert standard, the Court held that particular EEOC interpretation should not be given deference in part because it contradicted statute's plain language). Because "the meaning of statutory language, plain or not, depends on context," King v. St. Vincent's Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), the interpretation of a statute requires consideration of the language of the relevant provision in conjunction with the entire statute, see Stafford v. Briggs, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980) (citing Brown v. Duchesne, 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1856)). Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to "absurd or futile results ... plainly at variance with the policy of the legislation as a whole," that interpretation should be rejected. Commercial Office Prods., 486 U.S. at 120, 108 S.Ct. at 1674 (internal quotations omitted).
 
 
 21
 We believe Yerdon's interpretation to be inconsistent with the statute as a whole. As the primary liability provision of Title VII, § 703 distinguishes among three primary participants in the employment process--"employers," "employment agencies," and "labor organizations," in subsections (a), (b), and (c), respectively. That the assignment of liability is a function of the role of the particular participant at issue undermines the strength of Yerdon's interpretation. Furthermore, nothing in the statute's text or legislative history gives any indication that the definition of employer contained in § 701(b) does not apply to a labor organization when it is sued as a result of its conduct as an employer. Indeed, that the definition of "employer" specifically includes labor organizations, 42 U.S.C. § 2000e(b), suggests that labor unions are to be treated no differently than other employers. If § 703(c)(1) were read to extend to a labor organization's activities as an employer, the result would be incongruous with congressional intent: an employer with fewer than fifteen employees that, fortuitously, is also a labor union, would be liable notwithstanding that it is excluded from the statutory definition of "employer." This result cannot be squared with the structure of § 703 as a whole, and we find that § 703(c)'s mandate that a labor organization may not "otherwise discriminate" applies only to a labor union in its role as a labor union and not as an employer.
 
 
 22
 We join the company of our sister circuits who have addressed this issue in comparable contexts. In an analogous case in the Ninth Circuit, an employee brought suit against her former union employer for age discrimination under the Age Discrimination in Employment Act ("ADEA"). Herman v. United Bhd. of Carpenters, 60 F.3d 1375 (9th Cir.1995). The employee and the EEOC argued that the union was liable under § 4(c)(1) of the ADEA, which makes it unlawful for a union "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age." 29 U.S.C. § 623(c)(1). The Ninth Circuit held that, despite the EEOC's view, "when a union is being sued, in its capacity as an employer, it must meet the statutory definition of 'employer' rather than some other statutory provision." Herman, 60 F.3d at 1384-85; see also Childs v. Local 18, Int'l Bhd. of Elec. Workers, 719 F.2d 1379, 1382-83 (9th Cir.1983) (assuming that labor organization must meet statutory definition of employer to be held liable for discrimination against employee under Title VII).
 
 
 23
 Similarly, in Greenlees v. Eidenmuller Enters., Inc., 32 F.3d 197 (5th Cir.1994), a former employee of an employment agency brought a suit against the agency under § 703(b), 42 U.S.C. § 2000e-2(b), claiming that it was an "employment agency." The Fifth Circuit rejected the EEOC's position on the grounds that the language of the statute was unambiguous, obviating the necessity for deference to the EEOC's interpretation, and that, in any event, the EEOC is due less deference than other agencies. Id. at 200; see also Chavero v. Local 241, 787 F.2d 1154, 1155 n. 1 (7th Cir.1986) (per curiam) (where "plaintiff attempts to hold the union liable in its employer capacity, it must fall under that definition ... just as any other employer").
 
 
 24
 Because we agree that a labor organization with fewer than fifteen employees cannot be sued as an employer for discrimination under Title VII of the 1964 Civil Rights Act, we affirm the grant of summary judgment in favor of the defendants on Yerdon's claim under § 703(c)(1).
 
 II. Retaliation under Title VII
 
 25
 Yerdon's second cause of action alleges that Local 1149 and defendant Henry, a new board member, retaliated against Yerdon for filing a complaint with the EEOC. Section 704 of Title VII makes it unlawful for a labor organization to discriminate against a member for opposing an unlawful employment practice or for making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). To make out a claim of retaliation under § 704, "a plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991); see Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988).
 
 
 26
 To satisfy the Johnson test, Yerdon must demonstrate the existence of a union action by which she was disadvantaged as well as a causal connection between that action and the protected activity. Because the filing of sexual discrimination charges is unquestionably a protected activity, see Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 63-64, 106 S.Ct. 2399, 2403-04, 91 L.Ed.2d 49 (1986), we consider whether the alleged union actions are sufficiently "disadvantaging" to Yerdon to constitute a prima facie case under § 704. Yerdon alleges that two union actions were taken in retaliation against her for filing sexual discrimination charges against Local 1149 in April 1993: first, the filing of internal union charges against her by Local 1149's secretary-treasurer; second, the sudden cancellation of her health benefits.
 
 
 27
 The district court concluded that the filing of internal union charges against Yerdon did not constitute retaliation because the charges had not yet been adjudicated and that, if the charges were ultimately dismissed, Yerdon would not have suffered any adverse effect from them. We agree. "An adverse action is one that affects the terms, privileges, duration, or conditions of employment." Johnson v. Frank, 828 F.Supp. 1143, 1153 (S.D.N.Y.1993) (internal quotation omitted). Although Yerdon claims that Local 1149 has delayed the adjudication of the charges for more than two years, she has presented no evidence to dispute Local 1149's claim that it was she who requested the delay.
 
 
 28
 The district court rejected Yerdon's retaliation claim based on the termination of her medical benefits on the ground that this allegation was not pleaded in her amended complaint. Citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend should be allowed except when there has been undue delay, bad faith, a dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendant or the amendment would be futile), the district court noted that it had "already provided plaintiff an opportunity to amend her complaint" and declined to extend another opportunity. Yerdon, 886 F.Supp. at 232 n. 4. The plaintiff asks that we remand this matter so that she may have the opportunity to further amend her complaint to incorporate the allegations concerning the termination of health care coverage.
 
 
 29
 We review the decision not to allow an amendment for abuse of discretion. Azurite Corp. v. Amster & Co., 52 F.3d 15, 19 (2d Cir.1995). Where it appears that granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend. See Foman, 371 U.S. at 182, 83 S.Ct. at 230. Under the present circumstances, we are not persuaded that the district court abused its discretion in denying leave to amend. First, it does not appear from the record that the plaintiff formally requested leave to amend her complaint for a second time with the submission of a proposed second amended complaint. Rather, Yerdon apparently referenced the alleged loss of health benefits in her response to the defendants' motion. Second, the defendants maintain that Blue Cross/Blue Shield, Local 1149's health benefits provider, was responsible for the loss of Yerdon's health benefits and that Local 1149 in fact intervened on her behalf to persuade Blue Cross/Blue Shield to reinstate her coverage. Yerdon has offered no evidence to dispute this claim. In her affidavit in opposition to the defendants' motion, Yerdon simply states that in October 1994, when she was scheduled to be admitted to the hospital, she was informed that her coverage had been cancelled effective October 1, 1994. Third, this action was commenced on March 31, 1994; the defendants moved to dismiss the complaint on June 15, 1994; the plaintiff filed an amended complaint with the permission of the district court on November 18, 1994; and the defendants filed a motion to dismiss the plaintiff's amended complaint, or alternatively for summary judgment, on January 13, 1995. Yerdon's sole justification for the belated request to amend her amended complaint is that she "did not learn of the true nature of the Fund's actions until after the amended complaint was filed." However, Yerdon became aware of the termination of her health benefits in October 1994 yet failed to allege in her subsequently filed amended complaint that the termination was taken in retaliation. In light of these facts, we conclude that the district court did not abuse its discretion in denying Yerdon leave to amend further.III. Remaining Claims
 
 
 30
 We summarily affirm the district court's grant of summary judgment in favor of the defendants with respect to Yerdon's remaining claims. Yerdon's claim under § 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, that she was terminated from employment as the local union secretary for exercising her free speech rights, is precluded by our holding in Franza v. International Bhd. of Teamsters, Local 671, 869 F.2d 41, 47 (2d Cir.1989). In Franza, we rejected a similar § 101 claim by a non-policymaking union employee who alleged that he was fired from union employment because he had opposed the election of present officers. Id.; see Finnegan v. Leu, 456 U.S. 431, 437, 102 S.Ct. 1867, 1871, 72 L.Ed.2d 239 (1982) (section 101 intended to protect "rank-and-file union members--not union officers or employees, as such").
 
 
 31
 Yerdon's claim under § 609 of the LMRDA, 29 U.S.C. § 529, is similarly unavailing, for she has failed to allege any "discipline" that she has suffered as the result of the filing of internal union charges within the meaning of that provision. Yerdon maintains that "the mere pendency of the charges for [more than two years], in and of itself, constitutes improper discipline." Section 609, which prohibits "certain discipline" by a labor organization, makes it unlawful "to fine, suspend, expel, or otherwise discipline" a union member for exercising his rights under the statute. Because the pendency of charges, standing alone, is not an act that rises to the level of these actions, we disagree with Yerdon. In any event, Yerdon has failed to present evidence to rebut Local 1149's contention that she is responsible for the delay.
 
 
 32
 Finally, Yerdon's claim under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), against the union for breach of its constitution must fail. Yerdon's claim that the union, as part of an ongoing campaign against her, has been trying to replace her is not cognizable under § 310, because Yerdon's allegation does not concern her membership rights but only her status as an employee. See Korzen v. Local Union 705, Int'l Bhd. of Teamsters, 75 F.3d 285, 288 (7th Cir.1996). Yerdon also claims that Local 1149 has failed to abide by the terms of an earlier decision by the Joint Council and the International Union. Although the district court's order following the defendants' first summary judgment motion expressly directed the plaintiff to state with specificity any § 301 claim that she might make in her amended complaint, she has failed to do so. Her general conclusory allegations are insufficient to defeat the defendants' motion for summary judgment.
 
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the defendants.
 
 
 
 [1]
 Otherwise, a labor organization is deemed to be engaged in an industry affecting commerce if it has a requisite number of members and meets certain other conditions. See 42 U.S.C. § 2000e(e)(2)