Anita **FERRONI**, Plaintiff–Appellant–Cross–Appellee,

v.

**TEAMSTERS, CHAUFFEURS & WAREHOUSEMEN LOCAL NO. 222,** Defendant–Appellee–Cross–Appellant.

Nos. 01–4101, 01–4112.

United States Court of Appeals, Tenth Circuit.

Aug. 7, 2002.

James S. Lowrie (Bruce Wycoff, with him on the briefs) of Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for Appellant–Cross–Appellee.

Stephen W. Cook of Stephen W. Cook, P.C., Salt Lake City, UT, for Appellee–Cross–Appellant.

Before TACHA, Chief Judge, ALDISERT *, and SEYMOUR, Circuit Judges.

TACHA, Chief Circuit Judge.

Plaintiff Anita Ferroni appeals the district court's grant of summary judgment to defendant, Teamsters, Chauffeurs & Warehousemen Local No. 222, regarding her employment discrimination claims. Defendant cross-appeals the district court's denial of its motion for attorneys' fees and its motion to strike Ferroni's affidavit. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Anita Ferroni was employed by Teamsters, Chauffeurs & Warehousemen Local No. 222 ("Union") from February 1996 until she was laid off in January 1999. Ferroni was initially hired as an organizer but began to assume duties of a business agent sometime in 1996. She performed the work of both an organizer and a business agent until the end of her employment with the Union. Ferroni was promoted to assistant business agent/organizer in November 1996 and became a business agent in 1998. Three men were hired as business agents in 1996 and 1997, after Ferroni was hired. Ferroni claims that she performed the same work as these men, was paid less, and was laid off on the basis of her sex.

There are significant differences between an organizer's and a business

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

agent's job responsibilities. Organizers recruit and organize employees under the National Labor Relations Act, and they perform certain election-related tasks. Business agents represent Union members. Their responsibilities include negotiating labor contracts, administering the grievance-arbitration process, filing unfair labor charges, and making decisions regarding strikes and other actions against employers.

Ferroni filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter in August 1999. Ferroni filed her lawsuit against the Union in federal court in November 1999, alleging violations of the Equal Pay Act and Title VII. In the spring of 2000, an opening for a business agent became available at the Union. Ferroni did not apply for this position, and the Union did not offer it to her. Ferroni amended her complaint to allege that the Union's failure to hire her for this position constituted retaliation in violation of Title VII. The Union moved for summary judgment and for attorneys' fees. Ferroni submitted an affidavit in opposition to the summary judgment motion despite having been deposed twice. The Union moved to strike the affidavit because it contained inadmissible statements. The district court granted summary judgment to the defendant on the merits, but denied the motions for attorneys' fees and to strike the affidavit.

## II. Discussion

### A. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court. *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir.2000). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the mov-

ing party is entitled to judgment as a matter of law. *Id.*

### B. Equal Pay Act

To establish a prima facie case under the Equal Pay Act, Ferroni has the burden of proving that "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1364 (10th Cir.1997) (quoting *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir.1993)). The equal work requirement of the EPA is not to be construed broadly. *Nulf v. Int'l Paper Co.,* 656 F.2d 553, 560 (10th Cir. 1981). "Like" or "comparable" work does not satisfy this standard, and "[i]t is not sufficient that some aspects of the two jobs were the same." *Id.*

In March 1997, the Union instituted a tier system for paying business agents. On April 18, 1997, Ferroni received a raise to $600 per week, and on November 1, 1997, her salary went up to $700. These salaries were consistent with the tier system's salary range for assistant business agents. On February 7, 1998, she was promoted to beginning business agent, with a salary of $808.85 per week. Her salary remained at this level until her employment ended in January 1999. Ferroni claims that she was paid less than three male business agents who were hired after her: Tom Monthey, hired June 1, 1996 as a business agent; Craig Eddins, hired November 11, 1996 as an assistant business agent; and Rusty Hart, hired February 7, 1997 as an assistant business agent. These business agents were paid according to the tier system, just as Ferro-

ni was. Thus, once the tier system had been instituted and Ferroni had been promoted to beginning business agent, there was no wage disparity, except for the minor differences due to agents' promotions to "second tier business agent" (at a salary of $835.81 per week) and "actual business agent" (at a salary of $889.81 per week) at different times. Thus, in order to survive summary judgment on her Equal Pay Act claim, Ferroni was required to produce evidence that would allow a jury to conclude that, *prior to her promotion to beginning business agent,* she was performing work substantially equal to that of the male business agents who were paid more.

Ferroni has failed to produce such evidence. According to her own deposition testimony, she was hired in 1996 as a labor organizer. She stated that she subsequently performed both organizer and business agent tasks, and that she continued to be both an organizer and a business agent until she was laid off. It is undisputed that organizers and business agents perform different tasks. Moreover, although she claims that her job responsibilities did not change when she was promoted in 1998 to beginning business agent, Ferroni has produced no evidence to show that her combination of organizer and business agent duties is substantially equal to the duties performed by the male business agents. She has therefore failed to show that she was paid less than male employees received for substantially equal work.

For these reasons, Ferroni has failed to establish a prima facie case for an Equal Pay Act violation, and the district court properly granted summary judgment on this claim.

## C. *Title VII*

The Union argued in its motion for summary judgment that there was no jurisdiction over Ferroni's Title VII claims, because Ferroni had failed to produce evidence that the Union met the statutory definition of "employer." The district court granted summary judgment on this basis. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Ferroni argues first that Title VII treats labor organizations differently from other entities, and that this definition therefore does not apply to her claims. Alternatively, she argues that, even if the definition applies, union stewards are employees and the Union therefore has at least 15 employees. Finally, she argues that, even if the definition of employer causes her Title VII discrimination claim to fail, her retaliation claim survives.

### 1. *Applicability of the Definition to the Union*

Title VII includes a specific section making certain practices by labor organizations unlawful. 42 U.S.C. § 2000e-2(c). Neither this section nor the definition of "labor organization," *id.* § 2000e(d), requires a minimum number of employees. Ferroni therefore argues that Title VII treats labor organizations differently from other employers, making the "employer" definition inapplicable to the Union. She further argues that the district court failed to accord deference to the EEOC's interpretation of the statute in its Compliance Manual, which states that the employer definition does not apply to labor organizations.

■ Ferroni is correct that Title VII contains separate anti-discrimination provisions for employers and labor organizations. Under the statute, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). It is also unlawful for a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his ... sex." *Id.* § 2000e–2(c)(1). We disagree with Ferroni's conclusion from this distinction, however. To determine the plain meaning of the statute, we must consider the statute as a whole. *Chickasaw Nation v. United States*, 208 F.3d 871, 878 (10th Cir.2000) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). Following this principle, we think it plain that these subsections refer to discrimination in two different types of relationships. Section 2000e–2(a) outlaws discrimination by an employer in the employer-employee relationship, while section 2000e–2(c) outlaws discrimination by a labor organization in the union-member relationship. Moreover, the plain language of the statute shows that a labor organization can be an employer. *Id.* § 2000e(b) (excluding "a bona fide private membership club (other than a labor organization)" from the definition of employer). There is no indication that a labor organization that is sued by an employee alleging discrimination in the employment relationship should be treated any differently than any other employer. We therefore conclude that the Union must meet the statutory definition of employer in order for there to be jurisdiction over Ferroni's discrimination claim, which concerns only the employer-employee relationship.

In reaching this conclusion, we agree with the other circuits that have addressed this issue. *See Kern v. City of Rochester*, 93 F.3d 38, 46 (2d Cir.1996) (holding that a labor organization must meet the definition of employer when it is sued under Title VII in its capacity as an employer); *Yer-*

*don v. Henry*, 91 F.3d 370, 375–77 (2d Cir.1996) (same); *Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198–200 (5th Cir.1994) (same with respect to employment agency); *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382–83 (9th Cir.1983) (assuming that labor organization must meet definition of employer); *see also Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1384–85 (9th Cir.1995) (interpreting ADEA's virtually identical definition of employer in same way, and relying in part on *Childs*, 719 F.2d 1379); *Chavero v. Local 241, Div. of Amalgamated Transit Union*, 787 F.2d 1154, 1155 n. 1 (7th Cir.1986) (taking this position in a footnote, though applicability of Title VII employer definition was not contested on appeal).

■■■■ Ferroni urges that some deference is due the EEOC interpretation of the statute. We disagree. The EEOC lacks authority to promulgate rules and regulations under Title VII, and its interpretation of Title VII is therefore entitled to deference only in proportion to its persuasiveness. *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *see also United States v. Mead Corp.*, 533 U.S. 218, 234–35, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (stating that such interpretations are entitled to consideration as persuasive authority). The statutory language, however, is unambiguous in light of the statute as a whole. Because the EEOC interpretation is directly contrary to the statute's plain language, considering it as persuasive authority does not change the outcome. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257–58, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (rejecting an EEOC interpretation that "lack[ed] support in the plain language of the statute"); *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 115–16, 108 S.Ct. 1666,

100 L.Ed.2d 96 (1988) (stating that "EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference," and evaluating "reasonableness" in light of "statutory context"); *see also Yerdon,* 91 F.3d at 376 (declining to defer to EEOC interpretation for these reasons); *Greenlees,* 32 F.3d at 200 (same).

### 2. Whether Stewards are Employees

■ Even if the employer definition applies here, Ferroni argues that it is met, because the Union's stewards must be counted towards the statutory requirement of 15 employees. We disagree.

■ Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). In evaluating whether someone is an "employee," courts consider the totality of the circumstances. *Lambertsen v. Utah Dep't of Corrs.,* 79 F.3d 1024, 1028 (10th Cir.1996) (enumerating relevant factors). It is undisputed that, if the stewards are not counted, the Union has fewer than 15 employees.

Ferroni relies on an Eighth Circuit case holding that union stewards are "employees" under Title VII. *Daggitt v. United Food & Commercial Workers Int'l Union, Local 304A,* 245 F.3d 981 (8th Cir.2001). She argues that the district court failed to evaluate the factors that the *Daggitt* court considered. Her reliance is misplaced, however. The *Daggitt* plaintiff had presented evidence of a range of factors, thus permitting the court to evaluate the totality of the circumstances. *Id.* at 987–89. In contrast, the only evidence Ferroni has produced concerning the stewards' status is documents showing isolated reimbursements for lost time. These isolated payments are insufficient to establish employment relationships that would justify counting the stewards towards the requirement of "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year." 42 U.S.C. § 2000e(b).

We cannot conclude that the district court erred in failing to consider evidence that Ferroni failed to produce. We therefore affirm the district court's conclusion that the Union had fewer than 15 employees.

### 3. Applicability of the Definition to Plaintiff's Retaliation Claim

■ Finally, Ferroni asserts that the employer definition is inapplicable to her retaliation claim. She bases this argument on the language of Title VII's retaliation provision:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Ferroni argues that this section treats labor organizations as distinct from employers and that a labor organization is therefore subject to retaliation claims even if it is not an "employer."

We reject this argument for the same reasons that we hold that the Union is not subject to Ferroni's discrimination claim if it does not meet the statutory definition of employer. Ferroni is correct that the retaliation provision distinguishes between employers and labor organizations. However, this distinction simply parallels the anti-discrimination provision's distinction between two · types of relationship—that between employer and employee, and that between union and member. Moreover,

we disagree with Ferroni's contention that the Second Circuit took a contrary position in *Yerdon*. Although the *Yerdon* court addressed retaliation claims after concluding that there was no jurisdiction over the plaintiff's discrimination claim, the allegedly retaliatory action it considered related to the plaintiff in her capacity as a union member. *Yerdon*, 91 F.3d at 378.[1] Ferroni has alleged retaliation against her as an employee, rather than as a union member. There is therefore no jurisdiction over this claim under Title VII.

### D. Motion for Attorneys' Fees

The Union argues that the district court erred in denying its motion for attorneys' fees. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (interpreting 42 U.S.C. § 2000e–5(k)). Claims that are dismissed for failure to state a claim are not automatically frivolous. *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir.1995). We review a denial of attorneys' fees for abuse of discretion. *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028 (10th Cir.2001).

The Union argues that the district court should have awarded attorneys' fees because (1) the EEOC investigated Ferroni's case and found it meritless; (2) the

Union's counsel wrote to Ferroni's counsel after discovery and requested that the action be dismissed, but Ferroni instead added a retaliation claim to the lawsuit; and (3) Ferroni's additional affidavit prior to the summary judgment hearing increased the costs of litigation. We reject these arguments and hold that the district court did not abuse its discretion when it denied the Union's motion for attorneys' fees.

### E. Motion to Strike Ferroni's Affidavit

The Union argues that the district court abused its discretion when it denied the Union's motion to strike in whole or in part Ferroni's affidavit, which the court also stated contained "a lot of inadmissible stuff." Because we affirm the district court's grant of summary judgment, it is unnecessary to address this claim.

### III. Conclusion

Ferroni's motion to supplement the record is GRANTED. For the reasons stated above, we AFFIRM the decision of the district court.

---

1. The Second Circuit does not explicitly state this, but the district court squarely held that the employer definition applied to a claim that a union retaliated against the plaintiff in her capacity as an employee. *Yerdon v. Teamsters Local 1149*, 886 F.Supp. 226, 231–32 (N.D.N.Y.1995). The appeals court addressed just one alleged act of retaliation on the merits—filing of internal union charges against the plaintiff. 91 F.3d at 378. The district court had explicitly acknowledged that this action was taken against the plaintiff in her capacity as a union member. 886 F.Supp. at 232. The Second Circuit also addressed the plaintiff's argument that the union canceled her health benefits in retaliation, but the court concluded that the district court did not abuse its discretion when it refused to allow the plaintiff to amend her complaint to add this allegation. 91 F.3d at 378.