**Eric J. WISDOM, Plaintiff,**

v.

**SAINT PAUL FIRE AND MARINE INSURANCE COMPANY,**
**Defendant.**

**No. 03–4087–RDR.**

United States District Court,
D. Kansas.

Jan. 23, 2004.

Norbert C. Marek, Jr., Myers, Pottroff & Ball, Manhattan, KS, for Plaintiff.

Stephen G. Sanders, The Law Offices of Steve Sanders L.C., Kansas City, MO, Teresa M. Thompson, Parsinen Kaplan Rosberg & Gotlieb PA, Minneapolis, MN, for Defendant.

**MEMORANDUM AND ORDER**

ROGERS, District Judge.

This is a declaratory judgment action. Plaintiff asserts that defendant had a duty

to defend and indemnify plaintiff in a lawsuit pursued against plaintiff by Devyn Falcon. This case is now before the court upon defendant's summary judgment motion.

Facts accepted for the purposes of this order

The following facts appear to be uncontroverted for the purposes of the instant motion only. Plaintiff Eric Wisdom is a dentist in Manhattan, Kansas who has practiced since 1975. Devyn Falcon worked for Wisdom as a dental assistant starting in early September 2000 and was twenty years old during the events in question.

Falcon filed a lawsuit against Wisdom which included the following allegations. Wisdom told Falcon that she would be a good person to help him with TMJ treatments. TMJ is a pain syndrome involving the temporomandibular joint. He told her that he needed a mature assistant since in some cases the patient would be required to remove his or her shirt. He said that this position would require extra training and that she would be paid more once the training was complete. Falcon ultimately agreed to the training so that she could become Wisdom's special assistant to work with TMJ patients. To conduct the training, Wisdom and Falcon arranged to meet on October 13, 2000 at an office in Chapman, Kansas which Wisdom had not used the previous six months. Falcon had not been to Chapman before. Wisdom said he chose this site because other staff members might be jealous if they learned he was providing this training to Falcon.

Wisdom had been trained in the use of an Alpha–Stim 100 micro TENS unit. He had used the unit on half a dozen patients. It can be used for TMJ. TMJ may require treatment with the unit over the entire body. Falcon has TMJ pain, and Wisdom was aware of this prior to the day in question. Wisdom stated in his deposition that Falcon complained of upper shoulder pain on the day in question and also requested that Wisdom work on her lower back.

According to Falcon, after they entered the office in Chapman, Wisdom had her sit down in the dental chair. He placed electrodes on her temple and face. She had all of her clothes on. Wisdom then asked her to take her shirt off. She complied. He placed electrodes on her shoulders and back. Then Wisdom instructed Falcon to remove her bra and next her "britches." He placed electrodes on her legs. Eventually, Wisdom removed Falcon's underwear, so that Falcon was sitting completely naked in the dental chair. Falcon asserted that Wisdom stated he thought this was conducive to the use of the Alpha–Stim 100 and massage therapy in treating Falcon's problems. Wisdom stated in his deposition that the idea in going to Chapman with Falcon was for her to learn TMJ treatment with the Alpha–Stim 100 by working on Wisdom and that he placed the electrodes on her shoulders and back because Falcon complained of upper shoulder pain. Deposition at pp. 66–67.

Falcon contended that she was scared, uncomfortable and attempted to convey to Wisdom that she was not interested in him. Wisdom then started to massage Falcon, using coconut oil as part of the massage.

Wisdom has had training on the use of massage in the treatment of TMJ. But, he stated in his deposition that on the day in question he used massage to treat Falcon's fibromyalgia and knots in her back. Deposition at pp. 99–100. Falcon did not believe the massage was connected to TMJ treatment. According to Falcon, Wisdom massaged Falcon's legs, buttocks, shoulders and breasts. He then moved to her vaginal area and massaged her labial area "over and over." Falcon stated that, de-

spite the fact that she was wearing a tampon, Wisdom penetrated Falcon's vagina digitally "over and over."

Falcon claimed that Wisdom asked Falcon personal sexual questions during this time. He removed his shirt, although Falcon objected. He also removed his pants. According to Falcon, he leaned down and attempted to kiss Falcon and continued to massage her vaginal area.

Falcon asked Wisdom what time it was and found an excuse to leave to pick up her husband. Wisdom paid her $40, asked her for a hug, and stated they should "find a time when we can do this again and you can work on me."

Falcon did not tell her husband immediately about what transpired with Wisdom. But, when they reached home, she began to cry and told her husband of how Wisdom took advantage of her. Falcon's husband called the police. The police interviewed Falcon and recommended that she go to the hospital and complete a rape kit.

Falcon testified that the contact with Wisdom was not consensual. Falcon has also testified that she fears going out unaccompanied or even leaving the house, that she suffers from depression and anxiety, and that she has sought treatment from various psychological providers since the incident.

The insurance policy in this case is a medical professional liability policy. It lists plaintiff's profession as "dentist". The policy provides that, "We'll defend any suit brought against any protected person for covered claims, even if the suit is groundless or fraudulent." The policy further provides that, "[Y]ou're protected against claims that result from: Professional services that you provided or should have provided."

In Falcon's first petition against plaintiff, she alleged:

On October 13, 2000, Defendant [Wisdom] persuaded plaintiff [Falcon] to accompany him to an unused dental office in Chapman, Kansas, for the purported purpose of training her in a new technique of pain alleviation for patients. He placed her in a horizontal chair and then, under the pretense of demonstrating the equipment and technique for pain reduction, he sexually assaulted the plaintiff, by touching her with the intent of bringing about an offensive and harmful contact. He fondled her breasts and genital areas, and in the process gradually removed all of her clothing and virtually all of his clothing.

The first petition alleged battery and outrage as the two causes of action.

The second amended petition alleged that Wisdom was "purporting to alleviate certain pains of plaintiff" and added a third cause of action which asserted that Wisdom "[w]hile acting as a professional and purporting to render services to plaintiff for pain alleviation, ... negligently caused her to suffer physical and emotional injury."

The third amended petition alleged that the purported new technique for pain alleviation was "for patients with temporomandibular joint (TMJ) problems" and that when Falcon was placed in a horizontal chair it was "under the pretense of demonstrating the equipment and technique for TMJ pain reduction, and purporting to alleviate the TMJ pain of [Falcon]."

Wisdom tendered the defense of Falcon's lawsuit to defendant under the policy on November 12, 2001. He later transmitted information to defendant regarding the amended petitions which Falcon filed. Defendant declined to defend the case on the grounds that Falcon's alleged injuries did not arise from the provision of professional services.

The instant declaratory judgment action was filed on or about March 11, 2003 in state court and removed to this court.

Summary judgment and other legal standards

"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222,* 297 F.3d 1146, 1149 (10th Cir.2002).

Under Kansas law, we interpret the insurance policy "in a way that will give effect to the intention of the parties." *Brumley v. Lee,* 265 Kan. 810, 963 P.2d 1224, 1226 (1998). "If the language is ambiguous, the construction most favorable to the insured must prevail." *Id.* Where there are no ambiguities in the policy, we "must enforce the unambiguous language according to its plain, ordinary and popular sense." *Cessna Aircraft Co. v. Hartford Accident & Indemnity Co.,* 900 F.Supp. 1489, 1497 (D.Kan.1995).

Under Kansas law regarding the duty to defend, [t]he duty to defend and whether the policy provides coverage are not necessarily coextensive. The duty to defend arises whenever there is a potential of liability under the policy. The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover.

*Jones v. Reliable Sec. Incorporation, Inc.,* 29 Kan.App.2d 617, 28 P.3d 1051, 1058 (2001). "The relevant determination for the insurer is whether there is 'a possibility that under the facts of the case the insured may be found legally obligated to pay damages because of an occurrence that was an insured risk; that is, a possibility that there may be a duty to indemnify arising out of the facts of the case.'"

*Bankwest v. Fidelity & Deposit Co.,* 63 F.3d 974, 978 (10th Cir.1995) quoting, *American Fidelity Ins. Co. v. Employers Mut. Casualty Co.,* 3 Kan.App.2d 245, 593 P.2d 14, 19–20 (1979). "The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407 (1973); see also, *Quality Painting, Inc. v. Truck Ins. Exchange,* 26 Kan.App.2d 473, 988 P.2d 749, 753 (1999) (duty to defend is determined by a good faith analysis of the information known to the insurer). Claims styled as negligence may be ignored when it is determined in good faith that the alleged injuries occurred from intentional acts. *First Financial Ins. Co. v. Bugg,* 265 Kan. 690, 962 P.2d 515, 526 (1998); *State Farm Ins. Companies v. Gerrity,* 25 Kan.App.2d 643, 968 P.2d 270, 272–73 (1998).

The duty to defend is broader than the duty of coverage. *Bankwest,* 63 F.3d at 978. "Although the duty to defend is determined by the allegations of the underlying complaint and by facts discoverable to the insurer, the duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means (e.g., summary judgment or settlement)." *Id.*

Arguments for summary judgment

Defendant makes three arguments for summary judgment. First, defendant asserts that under Kansas law, public policy prohibits insurance coverage for intentional and malicious acts. See *Spruill Motors,* 512 P.2d at 407; see also, *Guaranty National Insurance Co. v. McGuire,* 173 F.Supp.2d 1107, 1110–1111 (D.Kan.2001). Plaintiff does not dispute this proposition. However, it must be acknowledged that the amended petitions Falcon filed against

plaintiff alleged negligence. Therefore, we must determine whether these allegations suffice upon the record to justify an obligation of coverage or a duty to defend against a claim of negligence.

Defendant's second argument asserts that the insurance policy does not provide coverage for the sexual assault which is alleged in the petition and amended petitions to have occurred. Defendant cites several cases from courts outside of Kansas. Plaintiff has responded by arguing that there is a split among courts which have considered similar cases and that the court should follow what appears to be the minority position. See cases collected at *Coverage of professional-liability or -indemnity policy for sexual contact with patients by physicians, surgeons, and other healers*, 1998 WL 329516, 60 A.L.R.5th 239 (1998). We do not find it necessary to address these cases in detail.

■ Defendant's third and final argument is that there was no duty to defend under the policy. Plaintiff asserts that defendant has chosen to emphasize the "wildest allegations made by Falcon" while ignoring other factual allegations which would support a duty to defend in this case.

The court finds that there was no duty to defend in this case and, of course, no coverage.

The court does not believe there is a possibility, under a good faith analysis of the facts alleged in Falcon's case, that defendant would be found liable for coverage. Treatment of TMJ or related training are the only professional dental services which might conceivably provide the basis for coverage. However, Wisdom testified in his deposition that the idea in going to Chapman with Falcon was for her to learn TMJ treatment by working on Wisdom and that he only gave massage and electrical treatments below the neck area to Falcon because she complained of shoulder and back pain, not to address TMJ. Deposition at pp. 66–67, 99–100. Falcon's deposition testimony does not even hint that the alleged battery, outrageous conduct, and infliction of physical and emotional injury were the result of negligent TMJ treatment or training. The sum of her testimony is that these claims were the outcome of Wisdom's intentional plan to sexually arouse Falcon and himself. Thus, the principal parties in Falcon's lawsuit agreed that the material actions underlying her claims did not involve the practice of dentistry. After an examination of the allegations and information available to defendant regarding Falcon's case, the court does not believe it is possible to find that Falcon's claims resulted from the provision of professional dental services.

Conclusion

Therefore, the court finds that defendant did not owe plaintiff a duty to defend or a duty of coverage under the insurance policy in this case. Defendant is granted summary judgment.

**IT IS SO ORDERED.**