FILED
United States Court of Appeals
Tenth Circuit

August 8, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICIA A. KELLER,

      Plaintiff-Appellant,

v.

CROWN CORK & SEAL USA, INC.,
a Delaware corporation,

      Defendant-Appellee.

No. 11-8075
(D.C. No. 2:10-CV-00246-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Patricia A. Keller appeals from the district court's grant of summary judgment

in favor of her former employer, Crown Cork & Seal USA, Inc. (Crown or the

Company), in her suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e-2 & e-5, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (EPA).

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

## *Background*

As required on summary judgment, we relate the facts in the light most favorable to Keller, the non-moving party.

In December 2006, the Company employed Keller as a Grade 3 purchasing clerk at its aluminum-can factory in Worland, Wyoming. Her starting salary was $23,808. Although her background was in food service and she had never had any experience in manufacturing, Keller quickly learned her duties and management began assigning her additional work. In March 2007, she became the back-up for the Production Control Manager (PCM), Mike Ostler, who began teaching her various aspects of the PCM job. She received a merit increase in pay that same month.

In November 2007, plant manager Bill Decker asked Keller if she would be interested in moving into the PCM position, because management wanted to move Ostler to another position. In February 2008, Decker announced at a supervisors' staff meeting that Keller would take over as PCM and Ostler would be the parts maintenance manager.[1] Keller moved into the PCM office. In March 2008, she received another merit increase.

According to Keller's estimate, from February to June 2008, she performed 90 percent of the PCM duties, in addition to performing her purchasing-clerk duties.

---

[1] The parties dispute whether Keller actually was named the PCM, or whether she was on a development plan that ultimately would lead to her being named the PCM. Viewing the evidence in the light most favorable to Keller requires us to assume she took over the PCM position.

But as she admitted, she did not perform certain aspects of the PCM job, including reading and transmitting bulk tank reports, preparing spoilage reports, and ordering raw metal. She received some assistance from other employees, including Decker, in performing some PCM duties. Further, Ostler continued to perform certain other duties he had done both before becoming PCM (in his position of preventive maintenance and production line supervisor) and while he was the PCM.

Upon being named PCM in July 2006, Ostler was at Grade 13, earning $49,859 per year. As of February 2008, he earned $54,969 per year. In May 2008, Decker obtained a two-grade increase and a raise of $2,000 for Keller, so she was classified as a Grade 5 Clerk earning $27,627 per year.

On June 2, 2008, Keller told her supervisor, office manager Richard Mangus, she objected to the disparity in pay and title between Ostler and her. She asked Mangus if the difference was because of gender, but Mangus denied the allegation. He told her she should "stop complaining" because she made "more than 90 percent of the women in Worland, Wyoming." Aplt. App. Vol. 3 at 482. It is unclear exactly what Keller requested Crown do; at a minimum she asked for an increase to the range of $32-33,000 per year, and at most she sought an increase to the entry-level salary for a PCM, apparently a Grade 10 position.

Shortly thereafter, Keller told Mangus and Decker she did not want to do the PCM job plus the purchasing-agent job for the salary she was making. On June 9, 2008, Decker told her the Company could not meet her compensation expectations

and removed her as the PCM. However, she kept the job-class increase and the $2,000 raise.

After Keller complained about her pay and Decker took away the PCM duties, Keller's relationship with Mangus and Decker soured. They called her into meetings in Decker's office, with Decker and Mangus becoming "loud and very heated." Aplt. App. Vol. 3 at 503. Mangus required her to either make up time for appointments or take vacation. He criticized her performance and wrote her up for perceived problems. Outside of the meetings with her and Decker, Mangus tended to communicate through e-mail and sticky notes. In July 2008, he told her not to attend staff meetings (a restriction which, later, was extended to everyone in certain job classes). A friend of Keller's who worked at Crown was told not to go to her work area or to talk to her anymore. The employment of another friend, a woman who supported Keller, was terminated. For her part, Keller admits, imitating Mangus and telling him she did not think he was good at his job and he was a crybaby, a puppet, and a coward. She also admits, in at least one instance, she ignored Mangus when he sought her attention.

Richard Backlund, Crown's Area Industrial Relations Manager, came to the Worland plant in June 2008 to try to resolve the issues. He was under the impression that Keller thought the situation could be fixed. In July 2008, however, Keller filed a charge of discrimination with the Wyoming Fair Employment Program and the Equal Employment Opportunity Commission. Over the following months Keller submitted

- 4 -

numerous complaints, through e-mail, to Fred Leh, Crown's national human resources director. Leh responded to Keller, and he visited the plant to speak with the relevant actors in an "attempt[] to resolve and get the office environment back into an effective working place of business." Aplt. App. Vol. 3 at 533. But he did not open an investigative file regarding Keller's complaints of a hostile work environment.

The situation fluctuated. In September 2008, Keller reported to Leh, "[t]hings have been much more at ease since your visit. I feel that Rick and I are able to interact with a lot more ease." Aplt. App. Vol. 1 at 260. But starting in October 2008, Keller began experiencing psychological and related physical problems. In February 2009, she signed her 2008 review, which included the comment, "2008 was a difficult year. Though we may not have always seen eye to eye I feel that we have been able to put aside our differences and continue to work as a team." *Id*. at 280. In the spring of 2009, however, Keller again complained to Leh regarding various matters. Further, in April or May 2009, an upper management employee visited the Worland plant and told Keller it was unlikely she would be given the PCM job because the plant was going to a two-line operation (it had been running only one production line for some time).

On April 23, 2009, accountant Terry Stanworth issued Keller a write-up for unacceptable job performance and unprofessional conduct. The review warned her of possible discipline, up to and including termination, and told her Stanworth would

follow up regarding her progress in correcting issues on May 22. For Keller, it was the last straw. On May 13, 2009, she took leave to address her health problems. Her physician cleared her to return to work on June 8, 2009. But during her leave, she decided she could not return to work at Crown. She went to retrieve her things, signed a resignation letter prepared for her by Stanworth, and was escorted out of Crown. She filed a second charge of discrimination on September 10, 2009.

### *Analysis*

"We review de novo the district court's grant of summary judgment, applying the same standard used by the district court." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1360 (10th Cir. 1997). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to Keller, the non-moving party. *See Sprague*, 129 F.3d at 1360-61.[2]

### I.       Equal Pay Act

Keller asserts the salary differential between her and Ostler violates the EPA. The general limitations period for an EPA claim is two years, *see* 29 U.S.C. § 255(a), but Keller did not file within that timeframe. Therefore, she sought to avail herself

---

[2]      Keller argues the district court employed the wrong legal standard, taking facts in the light most favorable to the Company rather than to Keller. We see no reason to reverse the district court's evaluation of the evidence. In any event, our review is de novo, and we have considered the evidence in the light most favorable to Keller.

of the EPA's three-year limitations period for willful violations, *see id*. The district court rejected this theory. Pointing to the differences between Ostler's duties and Keller's duties, and to Ostler's greater experience and technical expertise, it decided Keller failed to establish any genuine issues of material fact that would show Crown's conduct was a willful violation of the EPA. On appeal, Keller argues she sufficiently showed her work was substantially equal to Ostler's and the district court erred in concluding Keller could not show Crown acted willfully.

The first prong of a prima facie EPA case requires Keller to show she "was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs." *Sprague*, 129 F.3d at 1364 (internal quotation marks omitted). "The equal work requirement of the EPA is not to be construed broadly." *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146, 1149 (10th Cir. 2002). "Like or comparable work does not satisfy this standard, and it is not sufficient that some aspects of the two jobs were the same." *Id.* (internal quotation marks omitted). "Rather, in order to prevail in such an EPA action, the jobs must be substantially equal in terms of skill, effort, responsibility, and working conditions." *Sprague*, 129 F.3d at 1364 (internal quotation marks omitted).

Keller admits she did not perform some of the duties Ostler performed and she received assistance in performing certain other duties. Given the evidence of record, no reasonable jury could conclude Keller's job was substantially equal to Ostler's.

Her performance of purchasing-agent duties in addition to many or even most PCM duties does not change this result, as different pay for "like" or "comparable" work does not establish an EPA violation. *See Ferroni*, 297 F.3d at 1150 (holding plaintiff "has produced no evidence to show that her combination of organizer and business agent duties is substantially equal to the duties performed by the male business agents"); *Sprague*, 129 F.3d at 1364-65 (concluding EPA claim failed because female's job was merely comparable to males' jobs); *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 560-61 (10th Cir. 1981) ("It is not sufficient that some aspects of the two jobs were the same. It is the overall job, not its individual segments, that must form the basis of comparison." (internal quotation marks omitted)). Moreover, even if a reasonable jury could find substantial similarity and the other elements of a prima facie EPA case, the evidence simply is insufficient to support the existence of a *willful* EPA violation, which is what Keller has to show to trigger the three year statute of limitations. The district court appropriately granted summary judgment to Crown on the EPA claim.

## II.     Title VII Sex Discrimination

Keller also claimed the Ostler/Keller pay differential was a result of sex discrimination in violation of Title VII. The district court held Keller failed to show a prima facie case because Ostler's PCM job was different her PCM job, and Ostler had "considerably greater supervisory, managerial, and technical experience." Aplt. App. Vol. 3 at 658. It further held (1) the Company produced legitimate,

- 8 -

nondiscriminatory reasons for Keller's lower pay, namely: (1) Keller was not performing all of the duties Ostler performed, and Ostler was more qualified, and (2) Keller had not argued the proffered reasons were pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (outlining the three-part burden-shifting analysis applicable to discrimination claims resting on circumstantial evidence).

On appeal, Keller urges us to apply the test used when a plaintiff produces direct evidence of discrimination. She also addresses the *McDonnell Douglas* analysis, asserting she established a prima facie case and "[t]he District Court failed to consider the plethora of evidence revealing Defendant's reasons as mere pretext for discrimination." Aplt. Br. at 43-44. But before the district court she did not advocate using the direct-evidence test and she did not discuss how the evidence satisfied her burden of showing pretext. Therefore, we decline to consider these arguments. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) (noting the "general rule that issues not raised below are waived on appeal" is particularly important on appeal from summary judgment). Moreover, it still was appropriate to grant summary judgment even if the district court erred in concluding she had not established a prima facie case with regard to this claim; that is because Keller did not satisfy her burden of showing pretext.

## III. Title VII Retaliation

Keller asserted two retaliation claims, one based on being removed from the PCM position and the other on being subjected to a hostile work environment. To establish a prima facie case of retaliation, Keller must show: "1) she was engaged in opposition to Title VII . . . discrimination; 2) she was subjected to adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998). The burden then shifts to Crown to produce a legitimate, non-retaliatory reason for its actions. *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1092 (10th Cir. 2007). If it does so, then Keller must demonstrate Crown's proffered reason is a pretext for discrimination. *See id.*

### A. Removal from PCM Position

The district court assumed, without finding, that Keller showed a prima facie case of retaliation with regard to the PCM job. It held the Company had proffered a legitimate, non-discriminatory reason for taking away the PCM duties—as Keller admitted, she had refused to perform those duties unless she received a substantial pay increase. The undisputed evidence, noted by the court, indicated such substantial promotions are "extremely rare" at Crown. Aplt. App. Vol. 3 at 661. It then concluded Keller failed to show Crown's reason was a pretext for discrimination. "Even if Decker had been authorized to give Keller her requested raise, but had chosen not to, nothing in the record supports the conclusion that his

- 10 -

choice was driven by a desire to retaliate against Keller for engaging in protected activity." *Id.*

Keller argues Crown's refusal to increase her salary was "a blanket refusal to comply with its legal obligation" regarding equal pay, Aplt. Br. at 49, and therefore the decision not to increase Keller's pay was not a legitimate reason for reassigning the PCM duties. As discussed above, however, Keller failed to show the Company was required to pay her the same amount it paid Ostler. And, given her assertion that she did not wish to continue performing the PCM duties if she were not given a substantial raise, no reasonable jury could find the Company's decision to relieve her of those duties was illegal retaliation. *See Sprague*, 129 F.3d at 1367 ("There is no indication that Thorn terminated Sprague because she attempted to engage in protected activity or because she exercised legal rights. On the contrary, the record supports the conclusion that Sprague was terminated because she refused to return to work after a period of prolonged absence.").

### B. Hostile Work Environment

Keller also claimed Decker and Mangus retaliated against her by creating a hostile work environment. Contrary to her arguments the court concluded the incidents of which she complained were not sufficiently severe to be actionable as an adverse employment action, but instead were "the ordinary tribulations of the workplace." Aplt. App. Vol. 3 at 664. Keller now argues she sufficiently established a prima facie case and showed pretext.

- 11 -

To establish a the second prong of a prima facie case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "[I]t is important to separate significant from trivial harms. . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The standard is an objective one. *See id.*

Keller generally complains about strict application of policies, increased supervision, write-ups, means and methods of communication with her supervisors, and restrictions on her employment relationships. As the district court concluded, these issues are in the nature of ordinary workplace tribulations; they do not rise to materially adverse actions sufficient to support a claim of retaliation. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (supervisors giving employee the "cold shoulder" and trying to avoid and to distance themselves from her not sufficient to support retaliation claim); *Lybrook v. Members of Farmington Mun. Schs. Board*, 232 F.3d 1334, 1339 (10th Cir. 2000) (putting employee on professional development plan and requiring weekly meetings insufficient to demonstrate adverse employment action); *Sanchez*, 164 F.3d at 533 (ageist remarks, requiring teacher to bring doctor's note to verify sickness, threatening to write teacher up for

insubordination, and threatening to put her on an improvement plan "does not rise to the level of a materially adverse employment action sufficient to satisfy the second prong of the prima facie case"). The district court appropriately granted summary judgment to the Company on this claim.

## IV.    Constructive Discharge

Finally, the district court concluded Keller did not present sufficient evidence for a jury to conclude she was constructively discharged. Keller argues her evidence created genuine issues of material fact as to whether a reasonable employee would have been compelled to resign. Specifically, she points to the following evidence: she was told she would never regain the PCM job, she was disciplined for her work performance in April 2009 and threatened with termination if she did not improve, and Crown did nothing to investigate her numerous complaints.[3]

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)

---

[3]    Keller also discusses her stress-related mental and physical ailments, and notes her doctor and therapist opined it would be better for her to leave Crown. But "the fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1136 n.7 (10th Cir. 2004).

(citation omitted); *see also Tran v. Trs. of State Colls.*, 355 F.3d 1263, 1270 (10th Cir. 2004) ("A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit."). Under the objective test, "neither the employee's subjective views of the situation, nor her employer's subjective intent with regard to discharging her, are relevant." *Tran*, 355 F.3d at 1270.

The conditions about which Keller complains do not rise to the level of an intolerable situation that left Keller no choice except to resign. *See id.* at 1271 (close supervision by management did not establish intolerable working conditions); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1281-82 (10th Cir. 2005) (stating, where disciplinary actions and requirement to attend training "were a direct result" of employee's "repeated misconduct": "In sum, the City's actions may have made [the plaintiff] unhappy, but not every unhappy employee has an actionable claim of constructive discharge." (internal quotation marks omitted)); *Baca v. Sklar*, 398 F.3d 1210, 1218 (10th Cir. 2005) ("Although his sour relationship with [his supervisor] may have made quitting [plaintiff's] best option, [plaintiff] has not presented a genuine issue of material fact as to whether he had no other choice but to quit and therefore felt compelled to resign." (international quotation marks and citation omitted)); *Sanchez*, 164 F.3d at 534 (ageist remarks, requiring teacher to bring doctor's note to verify sickness, and threatening to write teacher up for insubordination, and threatening to put her on an improvement plan did not establish

constructive discharge: "While we have no doubt that Ms. Sanchez found her working conditions extremely difficult, and that the stress exacerbated her health problems, we cannot conclude that objectively DPS's actions left Ms. Sanchez with no choice but to resign.").

Keller relies on *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1229 (10th Cir. 2009), in which this court held the evidence regarding constructive discharge was sufficient to go to a jury. We are not convinced, however, that the evidence in this case could be interpreted to favor Keller in the way a reasonable jury could interpret the evidence to favor the plaintiff in *Strickland*.

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge